**FILED**

AUG 28 2018

_[signature]_ CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| SOUTH DAKOTA WHEAT GROWERS ASSOCIATION; | 1:14-CV-01008-CBK |
| Plaintiff, | |
| vs. | ORDER |
| CHIEF INDUSTRIES, INC.; GATEWAY BUILDING SYSTEMS, INC.; and HEYER ENGINEERING, P.C., | |
| Defendants. | |

## BACKGROUND

On April 7, 2014, plaintiff South Dakota Wheat Growers Association ("SDWG") filed suit in state court against Chief Industries, Inc. ("Chief") and Gateway Building Systems, Inc. ("Gateway") to recover damages incurred by SDWG as a result of the failure of a Chief Industries Big Bin at SDWG's Mellette, South Dakota, facility on January 5-6, 2013. Chief properly removed the claim to this court on May 6, 2014. On November 16, 2015, SDWG moved to add claims against Heyer Engineering, P.C. ("Heyer") to its complaint, which this court granted on January 7, 2016. Following the completion of discovery on August 1, 2017, defendants moved for summary judgment and SDWG moved for sanctions against Heyer.

SDWG's claims arise out of a series of events that occurred following the erection of the Chief Big Bin at its Mellette, South Dakota, site. Chief manufactured the Big Bin, which Gateway, as a Chief distributor, erected. Gateway was also responsible for installing the foundation for the Big Bin, which Heyer designed. Shortly after the substantial completion of construction of the Big

Bin in January of 2000, cracks were discovered in the stem wall of the bin at the interface with the south loader door frame. Large plates were designed by Heyer and installed by Gateway to address the cracks. The wall above the loader door then tilted inwards, wrinkling, in May of 2000. In November of 2000 and April of 2001 the Big Bin's roof partially collapsed and was repaired. In December of 2001, a tear occurred on the east side of the loader door on the inside of the door frame, followed by a tear on the west side of the loader door on the outside of the door frame in April of 2002. In April of 2003, a tear again appeared on the east side of the loader door on the outside of the door frame. Each tear was repaired. However, SDWG states that another tear occurred at the east door jamb on January 5-6, 2013, resulting in the ultimate collapse of the bin. SDWG claims damages resulting from the tear and other defects which damages are $3,598,789.95.

SDWG alleges that Chief made representations that the Big Bin would have a snow-wind load of 30-90 pounds per square foot ("PSF") and that the Big Bin could be built on 3000 pounds per square inch ("PSI") soil without concern for differential settlement. SDWG also alleges that Gateway and Heyer did not correctly install rebar in the concrete foundation of the Big Bin and that repairs were improperly made. The parties do not dispute that the conditions of sale include a provision that "the equipment is sold by the dealer only with the standard warranty of the manufacturer, if any... [t]here are no other warranties expressed, implied, or statutory, upon which said equipment is sold or erected." Chief's Standard Limited Grain Bin Warranty states "that the components manufactured by Chief Industries, Inc., were, on the date of delivery to you, free from defects in the composition of material, Chief workmanship, and design." The warranty "is applicable under normal use and service to defects which become evident within a period of five (5) years from the date of delivery of [the] Chief Grain Bin."

SDWG brought claims against Chief for negligence in designing the Big Bin; for willful, wanton and gross negligence in its representations of the Big Bin's snow and wind loads and required soil rating, as well as for inadequate design and execution of repairs; for fraudulently misrepresenting that the Big Bin was structurally sufficient for the Mellette, South Dakota, site; for statutory deceit, negligent misrepresentation and deceptive trade practices for the same alleged misrepresentations; strict products liability for the design and manufacture of the Big Bin; post-sale duty to warn; breach of contract for design and repair deficiencies; breach of express warranty; and equitable estoppel in light of SDWG's alleged agreement not to sue following promises purportedly made regarding the repairs to the Big Bin.

SDWG brought claims against Gateway for negligence and willful, wanton, and gross negligence in constructing and repairing the Big Bin; for fraudulent misrepresentation, fraudulent concealment, statutory deceit, and negligent misrepresentation in connection with the Big Bin's snow and wind loads and the failure to install rebar under the loader door; deceptive trade practices for Gateway's failure to inform SDWG of the Big Bin's actual snow and wind load capacity; strict products liability with respect to Gateway's construction of the concrete stem wall, foundation, footings, pilings and stem wall plates for the Big Bin; breach of contract for failure to properly design and repair the concrete and rebar; breach of express warranty and implied warranties of merchantability and fitness for a particular purpose; and equitable estoppel.

SDWG also brought claims against Heyer for negligence and professional negligence for the design of the Big Bin foundation, aeration tunnels, and failure to properly calculate the hoop tension in the stem wall of the Big Bin for purposes of the plate repair; for breach of contract for Heyer's failure to properly design the Big Bin foundation; and for fraudulent concealment by aiding and abetting for failing to inform SDWG and Chief that the rebar was not constructed under

3

the loader door. SDWG also brought a claim against Heyer seeking sanctions in light of Heyer's alleged spoliation of documents related to this dispute.

Chief moved for summary judgment, arguing that SDWG's claims are barred by the statute of repose and various statutes of limitations; that tort claims are barred by the economic loss doctrine; and that the express warranty claim is barred by the Statute of Frauds. Gateway similarly moved for summary judgment, arguing that SDWG's breach of contract and implied warranty claims are barred by the statute of limitations; that SDWG's tort claims are barred by the economic loss doctrine; that SDWG's negligence, strict products liability, breach of implied warranty, breach of contract, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, statutory deceit, deceptive trade practices, and willful, wanton, and gross negligence claims are barred under the statute of repose; and that the negligent misrepresentation, equitable estoppel and breach of express warranty claims fail as a matter of law. Heyer also moved for summary judgment, stating that plaintiff's claims are time-barred by the statute of repose and that SDWG's claims for fraudulent concealment by aiding and abetting fail as a matter of law.

This court will first address whether plaintiff's claims are barred by the economic loss doctrine, the statute of repose, or statute of limitations before determining whether sanctions for spoliation are appropriate.

**DECISION**

**I. Standard of Review**

The purpose of summary judgment is to determine whether there is a "genuine issue for trial" with regard to a claim or defense or "part of each claim or defense." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.; 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a). Summary judgment should be granted only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If facts are disputed,

4

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed and "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). However, a nonmoving party "may not rest on mere allegations or denials" and "must do more than show that there is some metaphysical doubt as to the material facts." <u>Anderson</u> at 256; and <u>Matsushita</u> at 587. In sum, an issue of fact is genuine if, based upon the evidence in the record, a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u> at 248.

## II. South Dakota Law Governs Substantive Issues

Neither the warranty provided by Chief nor the purchase orders provided by Gateway identify the applicable law governing those instruments. The current dispute is before this court on the basis of diversity of citizenship. With the exception of venue transfers, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *See, e.g.*, <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas</u>, 134 S. Ct. 568, 582 (2013) (internal citations omitted). SDCL § 53-1-4 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." South Dakota has also adopted the most significant relationship approach for torts. <u>Chambers v. Dakotah Charter, Inc.</u>, 488 N.W.2d 63, 68 (S.D. 1992). The parties do not dispute that the Big Bin was erected at SDWG's Mellette, South Dakota, site and this site is the place where the relationship between the parties is centered. The place of performance, and of the most significant relationship, then, is South Dakota, and South Dakota law therefore governs the substantive issues in this case.

## III. The Uniform Commercial Code Applies

The UCC applies to transactions for the sale of goods, where goods "means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." SDCL § 57A-2-105. Where a contract provides for both goods and services, South Dakota has adopted the predominate purpose test to determine whether the UCC applies. *See, e.g.,* Jandreau v. Sheesley Plumbing & Heating Co., Inc., 324 N.W.2d 266, 268 (S.D. 1982). The operative question is whether a contract is "for the rendition of a service with goods incidentally involved or . . . a transaction of sale with labor incidentally involved?" City of Lennox v. Mitek Industries, Inc., 519 N.W.2d 330, 332 (S.D. 1994). In the current case, it is clear that this contract would not have been executed were it not for the purpose of purchasing the Big Bin. It is also clear that the services provided by Gateway and Heyer in designing and installing the Big Bin's foundation are incidental to the purchase of the bin itself. The UCC therefore governs the purchase orders and warranty at issue in this dispute.

## IV. The Economic Loss Doctrine

Having determined that the UCC governs this dispute, the next inquiry is whether the economic loss doctrine bars any available tort causes of action. "The general rule is that economic losses are not recoverable under tort theories; rather, they are limited to the commercial theories found in the UCC." City of Lennox at 333. The Supreme Court of South Dakota has articulated the rational for the economic loss doctrine in the following statement:

> The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort. The doctrine draws a legal line between contract and tort liability that forbids tort compensation for certain types of foreseeable, negligently caused, financial injury. The economic loss doctrine, therefore, sets forth that regardless of whether a tort duty may exist between contracting parties, the actual duty one party owes to

6

> another for purely economic loss should be based exclusively on the
> contract to which they agreed and assigned their various risks.

Kreisers Inc. v. First Dakota Title Ltd. Partnership, 852 N.W.2d 413, 421 (S.D. 2014) (internal

citations omitted). Privity of contract is not a requirement for invoking the economic loss rule

where, as in the instance case, a manufacturer provides a warranty for a product it sells through a

distributor. Corsica Co-op. Ass'n v. Behlen Mfg. Co., Inc., 967 F.Supp. 382, 387 (D.S.D. 1997).

South Dakota recognizes two exceptions to the economic loss doctrine: (1) where the damage is

to "other property" and (2) where personal injury is involved. Kreisers at 421. No personal injury

is alleged here. Damage to other property is defined as "damage to property collateral to the

product itself." Agristor Leasing v. Spindler, 656 F.Supp. 653, 657 (S.D. 1987). Examples of

"other property" include a defective heater that exploded and destroyed a major portion of a refiner

and defective brakes that caused a truck to run into a home. *Id.* Damages that constitute

consequential damages do not satisfy the "other property" exception to the economic loss doctrine.

Diamond Surface, Inc. v. State Cement Plant Com'n, 583 N.W.2d 155, 162 (S.D. 1998) (*quoting*

City of Lennox at 333-34). Consequential damages "do not flow directly and immediately from an

injurious act" but "result indirectly from the act." Damages, BLACK'S LAW DICTIONARY

(10th Ed. 2014).

While some courts have recognized exceptions to the economic loss doctrine for fraud,

fraud in the inducement, negligent misrepresentation, negligent provision of services by licensed

professionals, and for violation of building codes or other statutory duties, damages for

foreseeable, negligently caused losses arising under a contract are limited to the terms of the

contract. *See* 6 Bruner & O'Connor Construction Law § 19:10 (2018) (collecting cases). SDWG

claims that Chief acted with willful, wanton and gross negligence in allowing welds to be

performed and gussets installed by contractors who did not have the proper qualifications to

perform such repairs and in inadequately selling and designing the Big Bin for the weather conditions in Mellette, South Dakota. SDWG also asserts claims of strict products liability against Chief for its manufacture and design of the Big Bin as well as for post-sale duty to warn regarding such defects. SDWG further claims that Gateway, in failing to properly install rebar or the stem wall plate fix, acted with a conscious realization that injury would be probable, and that Gateway was strictly liable for failure to warn of the Big Bin's faulty design. SDWG states claims against Chief and Gateway for negligent misrepresentation with regard to the design of the Big Bin and repairs made in 2002. Finally, SDWG asserts claims of negligence and professional negligence against Heyer for its design of the foundation and aeration tunnels and the plate repair fix. SDWG's damages include not only the damages to the grain bin, but also damages for grain stored in the bin. Damages for grain stored in the bin are consequential damages that would not fall under the "other property" exception to the economic loss doctrine. The economic loss doctrine would therefore bar SDWG's negligence, strict products liability, and post-sale duty to warn claims. However, it is possible that claims associated with Chief's failure to design the Big Bin in accordance with the building codes for snow and wind loads applicable to Mellette, South Dakota, negligent misrepresentation claims against Chief and SDWG, and Heyer's alleged professional negligence would survive application of the economic loss doctrine.

Courts in other jurisdictions have determined that the economic loss rule does not bar negligence claims based on the violation of a building code. *See, e.g.*, Brian and Christie, Inc. v. Leishman Elec., Inc., 150 Idaho 22, 25-27 (2010); Association of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Haw. 232, 295 (2007); and Stallings v. Kennedy Elec., Inc., 710 So.2d 195, 195-97 (Fla. 5th DCA 1998). At least one other court, though, has declined to waive the economic loss doctrine for violation of a building code where the court found no public policy-based tort duty arose from the municipal building code. Sullivan

v. Pulte Home Corp., 237 Ariz. 547 (Ct. App. Div. 1 2015). Since it is possible that South Dakota would recognize such an exception, and since there is a dispute as to whether Chief indeed violated the applicable building codes for snow and wind loads in designing the Big Bin, this court should not rule that, as a matter of law, that summary judgment on SDWG's claims against Chief for negligent design is proper.

It appears that the Supreme Court of South Dakota has never directly addressed whether the economic loss rule bars recovery for negligent misrepresentation. The District Court for the District of South Dakota has allowed claims for fraud to go forward after finding that the economic loss rule applied to bar certain claims. Brookings Mun. Utilities, Inc. v. Amoco Chemical Co., 103 F.Supp.2d 1169, 1178 (D.S.D. 2000). The District Court has also held that "[o]n balance, the South Dakota Supreme Court seems more likely to hold that the economic loss doctrine does not bar fraud claims . . . ." Northwestern Public Service v. Union Carbide Corp., 115 F.Supp.2d 1164, 1170 (D.S.D. 2000). Including negligent misrepresentation as a species of fraud, I also hold that such misrepresentation claims should not be barred by the economic loss rule. Indeed, "[p]rior to the adoption of the economic loss rule, courts routinely awarded purely economic damages when a defendant's misrepresentation induced a transaction." Joseph Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation*, 41 WM. & MARY L. REV. 1789, 1802 (2000). While SDWG's claims against Chief and Gateway for negligent misrepresentation with regard to the design of the Big Bin could ultimately be barred by the statute of repose, as discussed in Part V, the negligent misrepresentations allegedly made with regard to repairs executed in 2002-2003 would not be so barred, and are addressed in Part X.

In South Dakota a cause of action also exists for "economic damage for professional negligence beyond the strictures of privity of contract." Wells Fargo Bank, N.A. v. Fonder, 868 N.W.2d 409, 416 (S.D. 2015) (internal citations omitted). South Dakota recognizes that

engineering firms may be held to a higher standard of care such that they would be subject to claims for professional negligence. *See, e.g.*, <u>Mid-Western Elec., Inc. v. DeWild Grant Reckert & Associates Co.</u>, 500 N.W.2d 250, 254 (1993). To deny such claims "would, in effect, be condoning a professional's right to do his or her job negligently with impunity as far as innocent parties who suffer economic loss." *Id.* South Dakota specifically recognizes that tort claims against at least some professionals may be exempt from the economic loss doctrine. <u>Kreisers</u> at 422. Since there is a genuine issue of material fact as to whether Heyer, as a professional engineering firm, was negligent in its design of the foundation and aeration tunnels and the plate repair fix, summary judgment on SDWG's claims for professional negligence is not proper.

## V. The Statute of Repose

SDCL § 15-2A-3 provides a statute of repose applicable to improvements to real property:

> No action to recover damages for any injury to real or personal property, for personal injury or death arising out of any deficiency in the design, planning, supervision, inspection, and observation of construction, or construction, of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury or death, may be brought against any person performing or furnishing the design, planning, supervision, inspection, and observation of construction, or construction, of such an improvement more than ten years after substantial completion of such construction. The date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended.

A "common sense approach" is used to determine whether an addition is an "improvement to real property" for the purpose of invoking § SDCL 15-2A-3. <u>Clark County v. Sioux Equip. Corp.</u>, 753 N.W.2d 406, 410 (S.D. 2008). The Supreme Court of South Dakota, acknowledging that the phrase has not been defined, has quoted with approval the following definition of "improvement to real property": "A permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more

10

useful or valuable as distinguished from ordinary repairs." *Id. (quoting* Jarnagin v. Fisher Controls Int'l, Inc., 573 N.W.2d 34 (Iowa 1997)). The Eighth Circuit, interpreting South Dakota law, similarly found that an underground pipeline, installed to provide an alternative source of fuel for a grain dryer, was an improvement to real property for the purpose of applying the statute of repose by determining "whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property, and is permanent in nature." Van Den Hul v. Baltic Farmers Elevator Co., 716 F.2d 504, 508 (8th Cir. 1983).

A grain bin, this court finds, would also constitute an improvement to real property: the bin is anchored to a concrete foundation, constituting if not a permanent addition then virtually as permanent an addition as construction that would constitute an improvement to real property, and certainly a betterment to that property that enhances the property's value and involves the expenditure of labor and money designed to make the property more useful. It is also evident that the bin is part of a grain-handling system that includes a hopper and elevators, further suggesting that its placement was intended to be permanent. Indeed, using the same analysis, the Supreme Court of North Dakota found that a grain bin was an improvement to real property subject to an analogous statue of repose. Bellemare v. Gateway Builders, Inc., 420 N.W.2d 733, 735 (N.D. 1988). The bin itself constitutes the improvement to real property, not later repairs made to it, as SDCL § 15-2A-3 "does not apply to claims for injuries arising from ordinary repairs." Brude v. Breen, 900 N.W.2d 301, 306 (S.D. 2017). In line with the common sense approach adopted by South Dakota, this court further sees no reason that a grain bin that constitutes a "good" when purchased such that its sale is governed by UCC Article 2 may not ultimately become an "improvement to real property" for the purpose of invoking the statute of repose articulated in

11

SDCL § 15-2A-3. Indeed, tax law acknowledges this distinction when assessing a tax both at the point of sale and in annual property taxes for real property improvements.

Invoking the rationale of Bellemare in answering a question certified by the Eighth Circuit, the District of North Dakota found that North Dakota's statute of repose, which contains language similar to South Dakota's regarding its applicability to "any deficiency in the design, planning, supervision, or observation of construction or construction of an improvement to real property," held that this statute did not apply to a manufacturer of building materials that constitute assembly line products used in an improvement to real property. § NDCC 28-01-44; and Hebron Public School Dist. No. 13 of Morton County v. U.S. Gypsum Co., 475 N.W.2d 120, 126-27 (N.D. 1991). Relying on this decision, the Eighth Circuit held that the statute of repose would not apply to an acoustical ceiling plaster, Audicote, installed on the ceiling of a school building that contained asbestos fibers. Hebron Public School Dist. No. 13 of Morton County v. U.S. Gypsum Co., 953 F.2d 398 (8th Cir. 1992). South Dakota has not rendered a similar decision, nor is this court aware of any other decision concerning a product as complex as a grain bin—this is not simply a furnace or ceiling plaster, the sort of assembly line products that the North Dakota court discusses. Nor is it a Whirlpool, merely shipped after manufacture. Reeves v. Ille Elec. Co., 551 P.2d 647, 652-53 (Mont. 1976). Unlike those products, a grain bin requires assembly, erection, and preparation of a foundation. Chief provides detailed instructions regarding assembly and erection. That certain aspects of the bin, such as its snow and wind loads, were not specifically designed, does not mean that it constitutes an assembly line product. As such, these cases should not render the statute of repose inapplicable to SDWG's claims against Chief.

A statute of repose "effects a legislative judgment that a defendant should be free from liability" by "bar[ring] all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action." In re

_Wintersteen Revocable Trust Agreement_, 907 N.W.2d 785, 793 (S.D. 2018). "The unqualified nature" of a statute of repose generally "supersedes the courts' residual authority and forecloses the extension of the statutory period based on equitable principles" such that equitable remedies would generally be unavailable to stop a defendant from invoking the statue of repose. _California Public Employees' Retirement System v. ANZ Securities, Inc._, 137 S.Ct. 2042, 2051 (2017). In spite of this precedent, this court will nonetheless consider SDWG's equitable estoppel claims as _California Public Employees' Retirement System_ largely addresses equitable tolling and concerns a federal statute.

Were it not for SDWG's request for equitable estoppel and exceptions to the statute of repose, then, SDWG's claims arising out of the initial construction of the Big Bin against Chief, Heyer and Gateway would be barred, as construction of the Big Bin was substantially completed in January of 2000, while service of summonses was not made until April of 2013, thereby commencing this action. SDCL § 15-2-30. This would include claims for breach of contract and breach of the implied warranties of merchantability and of fitness for a particular purpose, which are "enforced under the form of a contract." _Virchow v. Univ. Homes, Inc._, 699 N.W.2d 499, 505 (S.D. 2005). However, exceptions to the ten-year statute of repose exist where

> the person involved in the planning, design, and construction of the improvements was guilty of fraud, fraudulent concealment, fraudulent misrepresentation, willful or wanton misconduct, or [where] the person involved in the planning, design, and construction of improvements to real estate expressly warranted or guaranteed the improvements for a longer time period.

SDCL § 15-2A-1; _see also_ SDCL §§ 15-2A-7, 15-2A-8. The statute of repose is an affirmative defense. _Clark County_ at 412. Where the defendant "by motion for summary judgment, asserts this type of affirmative defense that bars an action and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden then shifts to the plaintiff

to establish the existence of material facts in avoidance of the statute." *Id.* Defendants have presumptively established this defense. The court now turns to plaintiff's claimed exceptions to the statute of repose.

## VI. SDWG's Claims for Fraudulent Concealment, Fraudulent Misrepresentation, Equitable Estoppel, Statutory Deceit and Deceptive Trade Practices

SDWG brought claims against Chief for fraudulent misrepresentation, against Gateway for fraudulent misrepresentation and fraudulent concealment, and against Heyer for fraudulent concealment. To toll a limitations period for fraudulent concealment,

> plaintiffs must prove three elements: (1) [defendant] knowingly concealed material facts that constitute plaintiffs' causes of action or, being fiduciaries, knowingly remained silent and failed to disclose those facts despite a duty to do so; (2) plaintiffs exercised due diligence in attempting to discover their causes of action; and (3) despite plaintiffs' due diligence, the [defendant]'s concealment prevented plaintiffs from discovering their causes of action.

Eagleman v. Diocese of Rapid City, 862 N.W.2d 839, 850 (S.D. 2015). Fraudulent concealment only tolls the period of limitation until "the moment the claim is discovered or might have been discovered with reasonable diligence." Gades v. Meyer Modernizing Co., Inc., 865 N.W.2d 155, 160 (S.D. 2015) (internal citations omitted). Moreover, "[a] claim accrues under the fraud discovery rule even when one may not yet know all the underlying facts or the full extent of damages." Strassburg v. Citizens State Bank, 581 N.W.2d 510, 515 (S.D. 1998). While Gades concerns a statute of limitations, there is no reason to distinguish between a statute of limitations and statute of repose for purposes of the applicability of fraudulent concealment to toll statutory limitations periods. *See, e.g.*, 32 Am. Jur. 3d Proof of Facts n.1 (1995). Although these cases do not address SDCL § 15-2A-1 specifically, this court sees no reason that the fraud discovery rule would operate differently here.

SDWG alleges that Gateway fraudulently concealed both the snow and wind loads of the Big Bin and the failure to install rebar under the loader door to make a continuous load path. SDWG similarly claims that Heyer fraudulently concealed, by aiding and abetting, the failure to install rebar. Plaintiff does not dispute that it was aware of the failure to install rebar by a July 11, 2002, meeting held among the parties. Plaintiff also does not dispute that, following two partial roof collapses caused by snow events in November of 2000 and April of 2001, structural members of the Big Bin roof were replaced in 2001 to increase the snow load of the roof, after which there were no additional issues with the Big Bin's roof. With reasonable diligence, then, plaintiff should have known of the snow and wind load discrepancy by 2001, if not before. Since plaintiff should have discovered both the failure to install rebar and actual snow and wind loads of the Big Bin by July of 2002, the ten-year statute of repose would begin to run at that time. As plaintiff did not serve summonses until April of 2013, any fraudulent concealment on either Gateway's or Heyer's part would not toll the statute of repose.

Fraudulent misrepresentation differs from fraudulent concealment in that the defendant either knowingly or recklessly makes an untrue statement of fact that the plaintiff justifiably suffers damage from as a result of reasonable reliance. *See, e.g.*, Estate of Johnson by and through Johnson v. Weber, 898 N.W.2d 718, 729 (S.D. 2017). To toll a limitations period for fraudulent misrepresentation, then, alike fraudulent concealment,

> false representations . . . must exist; the party to whom it was made must have been without knowledge of the real facts; th[e] representations . . . must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury.

L.R. Foy Const. Co., Inc. v. South Dakota State Cement Plant Com'n, 399 N.W.2d 340, 344 (S.D. 1987) (internal citations omitted). However, such "[mis]representations will not override . . . subsequent knowledge." Eagleman at n.6. As with fraudulent concealment, then, fraudulent

misrepresentation will only toll the period of limitation until plaintiff discovers the claim or should have discovered the claim with reasonable diligence. In addition to claiming fraudulent misrepresentation by Gateway and Chief with regard to the snow and wind loads, SDWG also alleges that Chief fraudulently misrepresented that the Big Bin could be built on 3000 PSI soil without concern for differential settlement. However, plaintiff acknowledges in its complaint that additional pilings and materials were installed at the time of construction after engineers for both plaintiff and Gateway became aware that such pilings would be required to compensate for the soil. Since plaintiff should have discovered the requirement for pilings and unsuitability of the Big Bin for the Mellette soil, the failure to install rebar, and actual snow and wind loads of the Big Bin by July of 2002, the ten-year statute of repose would begin to run at that time, and plaintiff's claims for fraudulent misrepresentation should therefore be barred.

SDWG requests that this court equitably estop defendants from invoking the statute of repose. The doctrine of equitable estoppel in South Dakota has four elements:

> To create an estoppel, there must have been some act or conduct upon the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights.

Wilcox v. Vermeulen, 781 N.W.2d 464, 468 (S.D. 2010) (internal citations omitted). The party to whom such a representation was made "must have been without knowledge of the real facts." Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund, 689 N.W.2d 196, 202 (S.D. 2004). The requirement that SDWG must be without knowledge of the real facts would bar equitable estoppel for claims surrounding the initial purchase, construction and erection of the Big Bin as discussed above. SDWG also claims that Chief misrepresented that repair work allegedly completed in 2002-2003 would last the lifetime of the bin, knowing that the underlying problem

16

was not solved, and inducing SDWG neither to sue nor demand that proper repairs be made. SDWG also states that Gateway represented that its plate repair fix was working as intended and that there was no movement in the stem wall in spite of allegedly documenting that movement was indeed occurring, and that Gateway requested SDWG not initiate suit. However, because the statute of repose does not apply to repairs, there is no need to invoke equitable estoppel for these claims for purposes of tolling this statute.

SDWG also brought claims against both Chief and Gateway for statutory deceit and deceptive trade practices. Neither of these causes of action are included as carve-outs from the statute of repose. The common-law tort of statutory deceit, likely barred by the economic loss doctrine, is analogous to the tort of fraudulent misrepresentation, having the following elements:

> [A] representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

Delka v. Continental Cas. Co., 748 N.W.2d 140, 151-52 (S.D. 2008). Similarly, a criminal suit under the Deceptive Trade Practices and Consumer Protection Act may be brought where a person

> Knowingly act[s], use[s], or employ[s] any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby.

SDCL § 37-24-6. A civil right of action is available under SDCL § 37-24-31. This court sees no reason that, for the purpose of determining the applicability of the statute of repose, these causes of action should be treated any differently than that of fraudulent misrepresentation or fraudulent misrepresentation which they mirror. As such, SDWG's claims for statutory deceit and deceptive trade practices should also be dismissed as untimely under the statute of repose.

## VII. SDWG's Claims for Willful and Wanton Misconduct

SDWG claims that Chief acted with willful, wanton and gross negligence in allowing welds to be performed and gussets installed by contractors who did not have the proper qualifications to perform such repairs and in inadequately selling and designing the Big Bin for the weather conditions in Mellette, South Dakota. SDWG also asserts claims against Gateway that, in failing to properly install rebar or the stem wall plate fix, Gateway acted with a conscious realization that injury would be probable. In line with the Supreme Court of South Dakota's decision in Brude, the statue of repose does not apply to claims arising from repairs and as such will not bar SDWG's claims against Chief for the performance of welds and installation of gussets and against Gateway for the stem wall plate fix. Brude at 306.[1]

Willful and wanton misconduct "is something more than ordinary negligence but less than deliberate or intentional conduct." Holzer v. Dakota Speedway, Inc., 610 N.W.2d 787, 793 (S.D. 2000) (internal citations omitted). A defendant "must have an affirmatively *reckless* state of mind" to constitute willful and wanton misconduct. Gabriel v. Bauman, 847 N.W.2d 537, 541 (S.D. 2014) (internal citations omitted). These terms "signify an actor's mental state" and support a determination of "whether the actor intended to do an act that was of an unreasonable character, in disregard of a known or obvious risk, which risk was so great as to make it highly probable that harm would result." *Id.* at 542. Whether one acts willfully or wantonly is "normally a jury

---

[1] Brude does not discuss whether a refurbishment exception should also apply to the statute of repose. A refurbishment exception, according to existing case law, "requires that the refurbishment be completed by the party being held accountable for the harm—ie, to hold the original manufacturer liable for injuries caused by a refurbished product, the product must have actually been refurbished by the manufacturer not a third party." Oppedahl v. Mobile Drill International, Inc., 2018 WL 3732850, *2 (8th Cir. 2018). In Oppedahl, the Eighth Circuit declined to determine whether the Iowa Supreme Court would adopt the refurbishment exception to the statute of repose, noting that it was not the manufacturer in that case which had made the refurbishment. *Id.* Here, this court declines to determine whether the Supreme Court of South Dakota would adopt a refurbishment exception, given that the repair exception adopted in Brude appears analogous to the refurbishment exception discussed in Oppedahl; although the Supreme Court of South Dakota does not discuss the requirement that repairs be made solely by manufacturers, it does note that the original landscaping company "did have control over the repair work because it performed the work." Brude at 306.

question." *Id.* In determining whether summary judgment for a claim of willful or wanton misconduct is appropriate, a court must "ask not only whether there is a conflict in the evidence, but also whether the undisputed facts are such that reasonable minds might differ in interpreting them in arriving at different conclusions on whether the defendant was willful, wanton, or reckless." *Id.*

Questions of fact exist as to whether Chief's design of the Big Bin amounted to willful or wanton misconduct in light of allegations that the Big Bin did not meet the building codes, such as the Universal Building Code and Metal Building Manufacturers Association load tables, applicable at the time for snow or wind loads in Mellette, South Dakota. Reasonable minds might also differ in determining whether Gateway was willful or wanton in failing to ensure the rebar was installed to create a continuous load path beneath the south loader door. For these reasons, this court finds that plaintiff has met its burden to establish the existence of material facts that could avoid application of the statute of repose as to SDWG's claims for willful and wanton negligence. However, because plaintiff's negligence claims are barred by the economic loss doctrine, those claims, to include claims regarding negligent repairs, are not sufficient to avoid the statute of repose, with the possible exception of claims against Chief for violation of building codes discussed in Part IV above, and claims against Chief and Gateway for negligent misrepresentation regarding their repairs, discussed in Part X below.

**VIII. SDWG's Claims for Professional Negligence Against Heyer**

SDCL § 15-2A-1 states that the statute of repose serves to

> equat[e] the rights of due process between the prospective litigants in the areas of planning, design, and construction of improvements to real property in an equitable manner, while adjusting the standard of care so that persons attempting to bring actions under a general standard of care against persons involved in the planning, design, and construction of improvements to real estate only have ten years

19

> to bring actions following substantial completion against those
> involved in planning, design, and construction . . . .

The statute's statement that it adjusts the standard of care such that claims alleging a general standard of care must be brought within ten years indicates that this statute was not intended to apply to claims of professional negligence, strict liability, or in other instances in which a heightened duty of care is applicable. As such, the statute of repose does not serve to bar SDWG's claims for professional negligence against Heyer.

## IX. SDWG's Claims for Breach of Express Warranty

SDWG claims that Chief guaranteed that the repairs it made during the 2002-2003 time frame would be adequate for the life of the Big Bin and that Chief renewed its five year written warranty for a five-year period at the July 11, 2002, meeting among the parties. SDWG also claims that Gateway similarly guaranteed and warranted that the repairs it made would be sufficient to correct the failure to install a continuous load path under the south loader door for the life of the Big Bin. SDWG states that such express warranties were violated by the ultimate failure of the Big Bin. Both Chief and Gateway contend that any purported verbal express warranty that they allegedly provided violates the statute of frauds.

According to SDCL § 57A-2-201(1),

> a contract for the sale of goods for the price of five hundred dollars
> or more is not enforceable by way of action or defense unless there
> is some writing sufficient to indicate that a contract for sale has been
> made between the parties and signed by the party against whom
> enforcement is sought or by his authorized agent or broker.

There are some exceptions to this requirement, none of which are applicable in the instant case. There appears to be no disagreement between the parties that no written, signed express warranties, other than the initial five-year warranty given by Chief, exist. Failures that occurred within the warranty period should have been remedied then and may not be brought under this cause of action

now. The settlement agreement negotiated between the parties was never executed and as such would not satisfy the statute of frauds. There exists no express warranty, then, with which SDWG could avoid the statute of frauds.

## X. SDWG's Claims for Negligent Misrepresentation against Chief and Gateway for Repairs

In order to state a claim for negligent misrepresentation, plaintiff must show that a party made

> (1) a misrepresentation, (2) without reasonable grounds for
> believing the statement to be true, (3) with the intent to induce a
> particular action by another party, and the other party (4) changes
> position with actual and justifiable reliance on the statement, and (5)
> suffers damage as a result.

Fisher v. Kahler, 641 N.W.2d 122, 126 (S.D. 2002). While representations as to future events are "[g]enerally . . . . not actionable," an exception exists where a "misrepresentation of a future event is in regard to a matter which is peculiarly within the speaker's knowledge. Meyer v. Santema, 559 N.W.2d 251, 255 (S.D. 1997) (internal citations omitted); and Mobridge Community Industries, Inc. v. Toure, Ltd., 273 N.W.2d 128, 133 (S.D. 1978) (internal citations omitted). This court finds that the sufficiency of the repairs engaged in by Chief and Gateway was peculiarly within each entity's knowledge.

SDWG's claims for negligent misrepresentations allegedly made by Chief and Gateway with regard to repairs executed in 2002-2003 and 2000, respectively, would not be barred by the statute of repose, as discussed above. SDWG alleges that Chief misrepresented that repair work completed in 2002-2003 would last the lifetime of the bin, knowing that the underlying problem was not solved, and inducing SDWG neither to sue nor demand that proper repairs be made. SDWG also states that Gateway represented that its plate repair fix was working as intended and that there was no movement in the stem wall in spite of allegedly documenting that movement was indeed occurring, and requesting that SDWG not initiate suit. SDWG further alleges that either

21

Gateway or Chief requested that Heyer provide an August 2002 letter indicating that the plate repair was sound. Chief and Gateway dispute the nature and background concerning their representations regarding their repair work as well as whether those representations should be barred as settlement negotiations. It is also unclear when SDWG would or should have discovered that the repairs were insufficient. None of the parties has briefed whether the statute of frauds would preclude these claims in light of the fact pattern at issue here. As such, and subject to the discussion regarding the statute of limitations below, the court should decline to grant summary judgment on these claims.

## XI. Statute of Limitations for Professional Negligence, Negligence for Violation of a Building Code, and Negligent Misrepresentation

The court now turns to whether the statute of limitations bars SDWG's surviving claims: for professional negligence against Heyer, for negligence in violation of a building code against Chief, and for negligent misrepresentation against Chief and Gateway. While the parties disagree as to whether SDWG had notice of the insufficiency of Chief's and Gateway's repairs such that the statute of limitations for those claims would have accrued, and while the remaining claims against Chief and Heyer would otherwise by barred by the six-year statute of limitations, this court determines that these claims may nonetheless be equitably tolled. SDCL § 15-2-13(6); *see also* Masloskie v. Century 21 American Real Estate, Inc., 818 N.W.2d 798, 803 (S.D. 2012) (holding that, where a claim "is based in fraud as much as in negligence . . . the doubt regarding the applicable statute of limitations is resolved in favor of the longer period"). "Equitable relief from a statute of limitations is an exception to the rule, and should therefore be used only in exceptional circumstances." Rodriguez v. Wal-Mart Stores, Inc., 891 F.3d 1127, 1129 (8th Cir. 2018) (internal citations omitted). Equitable tolling is a remedy reserved "for circumstances that are truly beyond the control of the plaintiff" and should be applied where a party acts diligently "only to find himself

22

caught up in an arcane procedural snare." Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir.1989); and Warren v. Department of Army, 867 F.2d 1156, 1160 (8th Cir.1989). Equitable tolling is appropriate where a defendant has been induced to allow a statute of limitations to expire. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 94-95 (1990). *See also* Dakota Truck Underwriters v. South Dakota Subsequent Injury Fund, 689 N.W.2d 196, 202 (S.D. 2004).

Because there is a dispute as to the representations Chief made to SDWG regarding the Big Bin's snow and wind loads, the applicable building code at the time the Big Bin was installed, and the representations Chief made to SDWG regarding the repairs made to the Big Bin, it is possible that plaintiff was induced to allow the statute of limitations to expire such that equitable tolling of plaintiff's claim against Chief for design in violation of a building code and negligent misrepresentation is appropriate. The extent to which Gateway misrepresented the suitability of the repairs it requested Heyer design and thereby induced SDWG not to seek additional repairs or file suit is also in dispute. Similarly, there is a dispute as to whether Heyer misrepresented that the plate repair fix it designed was working as intended, thereby persuading plaintiff to avoid requesting additional repairs or filing suit. Disputes also exist as to whether the representations plaintiff alleges were made were done so during settlement negotiations and would thereby be barred. Since "statute of limitations questions are normally left for a jury," the court should decline to grant summary judgment on these issues until the factual basis supporting equitable tolling and the accrual of plaintiff's claims regarding repairs is developed at trial. Strassburg at 513.

## XI. Spoliation Sanctions Against Heyer

SDWG seeks sanctions against Heyer in light of Heyer's alleged spoliation of documents related to this dispute. In diversity cases, "federal law applies to the imposition of sanctions for the spoliation of evidence." Sherman v. Rinchem Co., Inc., 687 F.3d 996, 1006 (8th Cir. 2012). A court's inherent power includes "the discretionary ability to fashion an appropriate sanction for

conduct which abuses the judicial process." Stevenson v. Union Pacific R. Co., 354 F.3d 739, 745

(8th Cir. 2004). Whether "the extent of a sanction is appropriate is a question peculiarly committed

to the district court." Id. at 745-46. SDWG requests that this court enter an adverse inference

instruction against Heyer. A district court may order an adverse inference instruction for spoliation

after finding that (1) "intentional destruction indicating a desire to suppress the truth" and (2)

"prejudice to the opposing party" exist. Burris v. Gulf Underwriters Ins. Co., 787 F.3d 875, 880

(8th Cir. 2015). A finding of intent "is a highly contextual exercise." Morris v. Union Pacific R.R.,

373 F.3d 896, 902 (8th Cir. 2004). Where "a corporation is involved, the inquiry depends in part

on corporate policies, but also to some extent on the intent of corporate employees . . . ." Id.

However, "if the corporation knew or should have known that the documents would have been

material at some point in the future then such documents should have been preserved . . . a

corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous

document retention policy." Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1112 (8th Cir.

1988). While the Eighth Circuit later clarified in Morris and Stevenson that the imposition of

sanctions for spoliation requires a finding of intentional destruction of evidence, the "knew or

should have known" standard establishes when a party's duty to preserve evidence arises.

Because the court may equitably toll the statute of limitations for claims against Heyer for

professional negligence, the court may also determine that an adverse inference instruction is

appropriate against Heyer. That Heyer received a litigation hold letter for documents related to this

case in January 2013 and that Heyer should have had additional files related to the claim are not

genuinely in dispute. Heyer alleges that, although a purge of documents occurred in September of

2014, it is not clear that whatever remained of the Big Bin file was purged at that time. Rather than

"indicate an intent to destroy any documents," Heyer claims, this evidence at most "indicates the

possibility that some documents relating to the original project and subsequent plate repairs may

have been inadvertently eliminated in the fall of 2014 by an office assistant in violation of Mr. Heyer's hold." This court is unpersuaded by Heyer's argument. As SDWG has indicated, the Big Bin file should have included specifications and drawings, correspondence and communication, and records regarding the installation of the plate repair fix. Transmittal documents regarding the rebar and aeration tunnel designs would also likely be included in the Big Bin file. The documents may have provided evidence as to what Heyer did not do and did not consider. Because Heyer received the notice of litigation, its files regarding the Big Bin should have been sequestered, such that "inadvertent elimination" would not occur. Given that there is evidence that Mr. Heyer sent the letter to his insurance agent shortly after its receipt, there is no reason for this court to believe that elimination of documents related to the file was "inadvertent," but rather that such elimination was done in bad faith.

This court also agrees that plaintiff was prejudiced by the spoliation of documents. Plaintiff has no ability to determine whether calculations done as part of the original design or the plate fix were completed accurately in light of their destruction. Documents relating to the failure to construct the rebar load path are also relevant to plaintiff's professional negligence claim against Heyer. As plaintiff indicates, documents missing would have "related to the circumstances of Heyer's revision of blueprints, including S1-aeration tunnel and placement of the door, and to S2 inclusion of the continuous load path" which would have clarified why "the original blueprints . . . did not include this important information." Specifications regarding the plate repair fix would also aid plaintiff in determining whether the design contained information indicating the bolt size and placement of bolts, the identity of the metal fabricator that allegedly cut the bolt holes, and the installation crew.

This court thus finds that spoliation has occurred. However, Heyer requests that the court deny SDWG's request for spoliation sanctions via the doctrine of laches. Laches does not "depend

25

.

on the passage of time alone; plaintiff must be chargeable with lack of diligence in failing to proceed more promptly." Golden v. Oahe Enterprises, Inc., 90 S.D. 263, 278 (S.D. 1976). Where a defendant engages in "concealment, misleading tactics and misrepresentation, laches is not available as a defense." *Id.* This court agrees with the District of New Jersey that the doctrine of laches "may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith in believing that the right had been abandoned." Wilkerson v. Brown, 2009 WL 2049162, *6 (D.N.J. 2009) (*citing* Knorr v. Smeal, 178 N.J. 169, 181 (2003)). Given that this court finds that Heyer acted in bad faith in spoliating documents relevant to this claim, and in light of the dispute surrounding Heyer's design of the plate repair fix, implication in the failure to install rebar that such fix was meant to correct, and potential misrepresentations related to both the fix and design, this court holds that the doctrine of laches should not be available to Heyer to deny SDWG's motion for spoliation sanctions.

An adverse inference instruction should be given to the jury, allowing the jury to draw an inference that the evidence destroyed would not support Heyer's claim. However, because the factual basis supporting equitable tolling of the statute of limitations on Heyer's claim will be developed further at trial, with the result that claims against Heyer may ultimately be dismissed, the court declines to impose further sanctions, such as attorney's fees and costs involved in generating the spoliation sanctions motion. Should claims against Heyer be dismissed as a result of the statute of limitations, any sanctions against Heyer for spoliation may also be dismissed. Spoliation itself should not serve to toll the statute of limitations, nor should such a sanction survive an otherwise time-barred claim. *See, e.g.*, Hunt v. City of Cleveland, 563 Fed.Appx. 404, 407 (6th Cir. 2014); and Sussman v. American Broadcasting Companies, Inc., 971 F.Supp. 432, 435-436 (C.D. Cal. 1997).

This court will not address whether spoliation sanctions against Gateway are appropriate, as SDWG has not submitted a motion requesting such sanctions.

**ORDER**

Now, therefore,

IT IS ORDERED:

1.  Gateway's motion for summary judgment, Doc. 98, is granted in part and denied in part. Summary judgment is granted as to all claims with the exception of Gateway's negligent misrepresentation with regard to repairs.

2.  Chief's motion for summary judgment, Doc. 105, is granted in part and denied in part. Summary judgment is granted as to all claims with the exception of Chief's negligence for violation of a building code and negligent misrepresentation with regard to repairs.

3.  Heyer's motion for summary judgment, Doc. 109, is granted in part and denied in part. Summary judgment is granted as to all claims with the exception of Heyer's professional negligence.

4.  Plaintiff's motion for sanctions against Heyer, Doc. 102, is granted.

Dated this 28th day of August, 2018.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge